UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CLIFFORD ERIC MARSH, | ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | No. 1:09-cv-13 *Mattice/Lee* |
| JUDGE SHERIDAN RANDOLPH; JUDGE AMY REEDY; ASSISTANT ATTORNEY GENERAL MATT MCCOY,[1] DETECTIVE DEWAYNE SCOGGINS, Sued in Their Official and Individual Capacities, | ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## MEMORANDUM

Plaintiff Clifford Eric Marsh ("Marsh"), a *pro se* prisoner, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 (Court Doc. 1). Plaintiff Marsh seeks monetary damages against Tennessee 10th Judicial District Sessions Court Judge Sheridan Randolph ("Judge Randolph") and Tennessee 10th Judicial District Criminal Court Judge Amy Reedy ("Judge Reedy"), claiming they set an excessive bond at a million dollars in violation of the Eighth Amendment, and against Assistant District Attorney Matt McCoy ("ADA McCoy") and Defendant Detective Dewayne Scoggins ("Detective Scoggins") for requesting the allegedly excessive and unconstitutional bond of a million dollars. In addition, Marsh contends Detective Scoggins violated his constitutional rights when he used excessive force when interrogating him by choking him in an attempt to obtain evidence about another suspect.

---

[1] Plaintiff amended his complaint with a claim against Assistant District Attorney Matt McCoy ("ADA McCoy"). The Clerk is **DIRECTED** to add ADA McCoy as a defendant to the Court's CM/ECF docket.

Considering the facts alleged in the complaint and the applicable law, for the reasons explained herein, the Court will **DISMISS** the defendant judges and assistant district attorney from this lawsuit. Although the Court will also **DISMISS** all the claims against Detective Scoggins in his official capacity and the claim against him for excessive bond in his individual capacity, Marsh will be permitted to go forward with his claim against Detective Scoggins in his individual capacity for excessive use of force.

The Court will first address the pending *in forma pauperis* motions (Court Docs. 6 & 9).

I.  **APPLICATION TO PROCEED *IN FORMA PAUPERIS***

It appears from the application to proceed *in forma pauperis* submitted by Marsh that he lacks sufficient financial resources at the present time to pay the required filing fee of $350.00. Marsh is not relieved of the ultimate responsibility of paying the $350.00 filing fee. Since Marsh is a prisoner in custody at West Tennessee State Penitentiary ("WTSP"), he will be **ASSESSED** the civil filing fee of $350.00 under the Prisoner Litigation Reform Act, Pub. L. 104-134, 110 Stat. 1321, codified in 28 U.S.C. § 1915. Marsh shall pay the full filing fee of three-hundred and fifty dollars ($350.00) pursuant to Prisoner Litigation Reform Act, Pub. L. 104-134, 110 Stat. 1321, codified in 28 U.S.C. § 1915.

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Marsh's inmate trust account at the institution where he now resides shall submit to the Clerk, United States District Court, 900 Georgia Avenue, Room 309, Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of

    (a)    twenty percent (20%) of the average monthly deposits to Marsh's

inmate trust account; or

        (b)    twenty percent (20%) of the average monthly balance in Marsh's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Marsh's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk of Court will be **DIRECTED** to send a copy of this Memorandum and accompanying Order to the Warden and Custodian of Inmate Accounts at WTSP, the Commissioner of the Tennessee Department of Correction, and the Attorney General for the State of Tennessee to ensure the custodian of Marsh's inmate trust account complies with the portion of the Prison Litigation Reform Act relating to payment of the filing fee.

The agency having custody of the plaintiff shall collect the filing fee as funds become available. This order shall become a part of inmate Marsh's file and follow the inmate if he is transferred to another institution. The agency having custody of the plaintiff shall continue to collect monthly payments from plaintiff's prisoner account until the entire filing fee of $350.00 is paid.

The plaintiff will also be **ORDERED** to notify this Court and defendant or defendant's attorney of any change of address if he is transferred to another institution, and to provide the prison officials at any new institution with a copy of this order. Failure of the plaintiff to notify this Court of an address change and/or the new prison officials of this order and outstanding debt, may result in the imposition of appropriate sanctions against plaintiff, up

to and including dismissal of this action, without any additional notice or hearing by the Court.

## II. STANDARD OF REVIEW

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States,* 508 U.S. 106, 113 (1993); *Boag v. MacDougall,* 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt plaintiffs from the requirement that they must comply with relevant rules of procedure and meet the requirements of substantive law. *Hulsey v. State of Texas,* 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996) (standard of review for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)-failure to state a claim upon which relief may be granted); *LRL Properties,* 55 F.3d at 1103-04; *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools,* 960 F. Supp. 1259, 1268 (W.D. Mich. 1997).

The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard,* 76 F.3d at 726; *Gazette v. City of Pontiac,* 41 F.3d

1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Lillard,* 76 F.3d at 726 (citations omitted).

This Court has an ongoing responsibility under the Prison Litigation Reform Act, 28 U.S.C. § § 1915 (e)(2) and 1915(A), to review plaintiff's action and dismiss the action or any portion of the action which fails to state a claim for which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A; *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir.1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

### III. **FACTS**

Construing Marsh's complaint in the light most favorable to him and taking into consideration his lack of legal training, the Court has determined that he alleges the following facts.

On or about August 8, 2008, Marsh was arrested for aggravated burglary and theft under $500.00, after being apprehended by a homeowner at gunpoint outside the homeowner's garage. Once Marsh was "under the guardianship of the arresting" officer, Detective Scoggins, without reading Marsh his constitutional rights, "forcefully" placed his hands around Marsh's throat to interrogate him about the identity of the other suspect. Because Marsh refused to provide any information, Detective Scoggins "made it clear that their (Scoggins [sic] & Stones [sic])[2] judicial state court associates would set [Marsh] a bond so high that [he would] wish [he] had cooperated." (Court Doc. 1, p. 4).

---

[2] Although he is not named as a defendant, Marsh alleges the victim's son, Detective James L. Stone, arrived on the scene with Detective Scoggins.

-5-

Case 1:09-cv-00013-HSM-SKL  Document 10  Filed 02/07/12  Page 5 of 18  PageID #: 52

Marsh's bond was subsequently set at one million dollars by Judge Randolph at the request of Detective Scoggins and ADA McCoy. At a second bond hearing, Judge Reedy upheld the million dollar bond.

## IV. 42 U.S.C. § 1983 CLAIM

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States by a person acting under color of law, without due process of law. *Flagg Brothers Inc. v. Brooks,* 436 U.S. 149, 155 (1978); *Chatman v. Slagle,* 107 F.3d 380, 384 (6th Cir. 1997); *Brock v. McWherter,* 94 F.3d 242, 244 (6th Cir. 1996); *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 995 (6th Cir. 1994); *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991), *cert. denied,* 502 U.S. 1032 (1992). Although the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts underlying the claim, the plaintiff must provide sufficient allegations to give defendants fair notice of the claims against them. *Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993). To state a § 1983 claim, Marsh must allege sufficient facts that, if true, would establish that the defendants deprived him of a right secured by the Constitution of the United States while acting under color of law. *See Brock,* 94 F.3d at 244.

## V. IDENTITY OF DEFENDANTS

### A. Official Capacity

Marsh has sued Judge Randolph, Judge Reedy, and ADA McCoy in their official and individual capacities. Before addressing the excessive bond claim against these three defendants in their individual capacities, the Court will explain why the claims against these

-6-

three defendants in their official capacity must be dismissed.

To the extent Marsh sues the state judges and assistant district attorney in their official capacity, he is suing the State of Tennessee, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), because suing a state official in his official capacity for acts performed within the scope of his authority is equivalent to suing the state itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Pursuant to the Supreme Court's decision in *Hans v. Louisiana*, 134 U.S. 1 (1890) expanding the application of the Eleventh Amendment to also preclude suits against a state brought by in-state citizens, this suit against these judges and the assistant district attorney in their official capacity must be dismissed. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Under current law, the Amendment bars federal court jurisdiction whenever any private citizen attempts to sue a state unless Congress expressly abrogates immunity or the state waives immunity; neither of which, as explained below, have occurred in the instant case. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Lawson v. Shelby County, Tenn.*, 211 F.3d 331 (6th Cir. 2000).

District courts do not have jurisdiction over suits brought directly against a state by its own citizens unless the state itself consents to be sued. *Welch v. Texas Dept. of Highways & Public Transportation*, 483 U.S. 468, 472 (1987); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984); *Thiokel Corp. v. Department of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993). A state can waive its Eleventh Amendment sovereign

immunity and consent to suit in federal court. *Will V. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 336-37 (6th Cir. 1990). However, the state's waiver and consent must be unequivocally expressed. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst,* 465 U.S. at 99; *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Abick v. State of Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986). The State of Tennessee has not waived its sovereign immunity under the Eleventh Amendment with respect to 42 U.S.C. § 1983. *Giorgio v. State of Tenn., Dept. of Human Services of Nashville and Jefferson County*, 92 F.3d 1185 (6th Cir. Aug. 7, 1996), *available at* 1996 WL 447656, *1; *Berndt v. State of Tenn.*, 796 F.2d 879, 881 (6th Cir. 1986).

A state may also be sued in federal court where Congress exercises its power under the Fourteenth Amendment to override or abrogate Eleventh Amendment immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1414 n.5 (6th Cir. 1996), *cert. denied*, 519 U.S. 1149 (1997). In *Quern v. Jordan*, 440 U.S. 332, 338 (1979), the Supreme Court held that in enacting 42 U.S.C. § 1983, Congress did not abrogate the right of the states to sovereign immunity under the Eleventh Amendment. *See also Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993), *cert. denied*, 510 U.S. 1119 (1994); *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992). Thus, the Eleventh Amendment prohibits federal courts from taking jurisdiction over actions filed by private citizens against a state pursuant to 42 U.S.C. § 1983. This jurisdictional bar applies regardless of the nature of the relief sought by the plaintiff. The Eleventh Amendment expressly applies to suits in equity as well as at law and necessarily

encompasses all demands for relief against the states including declaratory judgments and injunctive relief, *Pennhurst*, 465 U.S. at 100; *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 152 n.2 (6th Cir. 1995), unless there is a request for "prospective relief to end a continuing violation of federal law." *Carten v. Kent State University*, 282 F.3d 391, 395 (6th Cir. 2002) (noting that the Supreme Court announced an exception to Eleventh Amendment immunity for claims requesting injunctive relief against individual state officials in their official capacities in *Ex parte Young*, 209 U.S. 123 (1908)).

In any event, because Marsh does has not provide his criminal history, the complete facts of the charges against him, his connection to the community, or his flight risk he has failed to raise a valid claim for excessive bail. Consequently, because Marsh has not raised a sufficient claim for excessive bail, to the extend he has requested prospective relief, he is not entitled to any such relief.

Accordingly, because Marsh has failed to raise a sufficient claim for excessive bail, and since federal courts generally have no subject matter jurisdiction over § 1983 causes of actions against officials of a state sued in their official capacities, to the extent Marsh sues the State Judges and Assistant District Attorney in their official capacities, the claims will be **DISMISSED WITH PREJUDICE** for lack of jurisdiction.

B.  **State Court Judges-Individual Capacity**

Marsh also brings suit against Judge Randolph and Judge Reedy individually. The Court concludes these allegations, even if true, fail to state a claim as a matter of law and must be dismissed pursuant to 28 U.S.C. § 1915(e).

Marsh asserts he is suing the Judges in their individual capacities for acts

committed in their official capacity for setting an excessive bond in the amount of $1,000,000.00. Excessive bond is prohibited by the Eighth Amendment of the United States Constitution. Excessive bond is that which is set at an amount higher than an amount reasonably necessary to assure the presence of a defendant at trial. *Stack v. Boyle*, 342 U.S. 1, 5 (1951).

Initially the Court observes that Marsh makes no specific allegations as to why his bail bond was excessive. For example, Marsh does not provide his criminal history, the complete facts of the charges against him, his connection to the community, or his flight risk. Marsh has therefore failed to raise a sufficient claim for excessive bail. Nevertheless, even assuming he has made a sufficient claim he is not entitled to any relief against the defendant judges.

Judges generally have absolute judicial immunity from civil suits, including 42 U.S.C. § 1983, for monetary damages, arising out of the performance of their judicial duties. *Ireland v. Tunis,* 113 F.3d 1435, 1440 (6th Cir. 1997) (*citing Mireles v. Waco,* 502 U.S. 9, 11 (1991); and *Barnes v. Winchell* 105 F.3d 1111, 1115 (6th Cir. 1997)). If a judge pursued the challenged conduct in the course of his judicial duties, then he will clearly be entitled to judicial immunity. *Palazzolo v. Benson,* 82 F.3d 418,(6th Cir. April 3, 1996), *available at* 1996 WL 156699, *4. A judge will not be deprived of immunity because the action he took may have been in error, was done maliciously, or was in excess of the judge's authority. *Mireles v. Waco,* 502 U.S. at 11; *Pierson v. Ray,* 386 U.S. 547, 554 (1967). Rather, a judge will be subject to financial liability involving the performance of a judicial act only when the judge has acted in the clear absence of all jurisdiction,*Stump v.*

-10-

*Sparkman,* 435 U.S. 349, 356-57 (1978); *cf. Forrester v. White,* 484 U.S. 219 (1988); *Pulliam v. Allen,* 466 U.S. 522 (1984), or when not acting in his judicial capacity. *Forrester v. White*, 484 U.S. 219, 229 (1988). A judge acts in the clear absence of all jurisdiction only if the matter upon which he acts is clearly outside the subject matter jurisdiction of the court over which the judge presides. *King v. Love,* 766 F.2d 962, 965 (6th Cir.), *cert. denied,* 474 U.S. 971 (1985); *see also White By Swafford v. Gerbitz,* 892 F.2d 457, 462 (6th Cir. 1989).

Presiding over bond hearings and setting bond are judicial acts which are within the scope of Judge Randolph's and Judge Reedy's jurisdiction. There is no allegation, nor does the Court find anything in the record to show, that either Judge Randolph or Judge Reedy acted in the clear absence of jurisdiction. Therefore, since Marsh's claims against the defendant Judges only involve judicial acts, Judge Randolph and Judge Reedy are absolutely immune from this civil suit for monetary damages. Judge Randolph and Judge Reedy made a determination of bond and any alleged claim arising from the exercise of that judicial function is barred by absolute immunity. *See Root v. Liston*, 444 F.3d 127, 132 (2nd Cir. 2006) (Judges who set bond are absolutely immune when they do so). Accordingly, all claims against Judge Randolph and Judge Reedy, who are entitled to absolute judicial immunity, will be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief may be granted**.**

### C. Assistant District Attorney

ADA McCoy is sued in his individual capacity. Marsh is challenging ADA McCoy's action of requesting that bond be set at $1,000,000.00. The Eighth Amendment provides

that "'[e]xcessive bail shall not be required.'" *United States v. Salerno*, 481 U.S. 739, 752 (1987). Assuming without deciding that the bond set for Marsh was excessive, the Court must decide whether Marsh can bring a claim against ADA McCoy for requesting that his bond be set at one million dollars. Initially the Court observes that the Judge and not ADA McCoy set Marsh' bond. Therefore, ADA McCoy's request that the judge set Marsh's bond at a million dollar bond is insufficient to state a constitutional violation. Moreover, ADA McCoy is entitled to prosecutorial immunity.

In *Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997), *cert. denied*, 522 U.S. 996 (1997), the United States Court of Appeals for the Sixth Circuit explained prosecutorial immunity as follows:

> Absolute or "quasi-judicial" immunity derived from common-law immunity accorded to judges has been extended to prosecutors when the prosecutorial activity is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 420, 430, 96 S.Ct. 984, 990, 995, 47 L.Ed.2d 128 (1976). The Supreme Court endorses a "functional" approach for determining whether an official is entitled to absolute immunity; we look to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988); *see also Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir.1989) ("Immunity rests not on status or title but on the function performed."). In our circuit, "precedent has established that 'the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process.'" *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir.1993), *cert. denied*, 512 U.S. 1237, 114 S.Ct. 2742, 129 L.Ed.2d 862 (1994) (quoting *Joseph v. Patterson*, 795 F.2d 549, 554 (6th Cir.1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987)).

*Ireland v. Tunis*, 113 F.3d at 1443.

It is well established that, when engaged in activities that are "intimately associated with the judicial phase of the criminal process[,]" prosecutors have absolute immunity from

-12-

a civil suit for damages under 42 U.S.C. § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute prosecutorial immunity protects the acts falling within a prosecutor's role as advocate for the state. *See Manetta v. Macomb County Enforcement Team*, 141 F.3d 270, 274 (6th Cir. 1998); *Ireland v. Tunis*, 113 F.3d at 1445. "Investigative acts under-taken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity[.]" *Ireland v. Tunis*, 113 F.3d at 1445. "Prosecutors are entitled to absolute immunity for 'initiating a prosecution and . . . presenting the state's case." *Lomaz v. Hennosy*, 151 F.3d 493, 498 (6th Cir. 1998) (quoting *Imbler v.Pachtman*, 424 U.S. at 430). This immunity extends to all decisions to prosecute except those "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357 (1978)).

Although the Court's research has not revealed a Sixth Circuit case explicitly ruling on the question of whether a prosecutor is entitled to absolute immunity when requesting bond be set at a certain amount, the Court is guided by the holding of other circuits that the process of setting bond is a component "of the initiation and presentation of a prosecution, and therefore [is] protected by absolute immunity." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2nd Cir. 1995) (citing *Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir.1983); *Burns v. County of King*, 883 F.2d 819, 823-24 (9th Cir.1989); *see also Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir.) (explaining that "advocating a particular level of bail" is covered by absolute immunity), *cert. denied*, 484 U.S. 828 (1987).

Applying the above principles to ADA McCoy's action of requesting a million dollar

bond, he is immune from suit in his individual capacity. Since Plaintiff has not alleged race, religion, or another arbitrary classification as ADA McCoy's motive for requesting a million dollar bond, absolute immunity provides complete protection from this lawsuit. Therefore, because the assistant district attorney's alleged request of a million dollar bond falls within his role as advocate for the state in the judicial process such request is not actionable under 42 U.S.C. § 1983. Accordingly, the claim against ADA McCoy will be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983. 28 U.S.C. § 1915(e).

    **D.**    **Detective Scoggins**

Marsh claims his bond was set at a million dollars based on the request of Detective Scoggins and ADA McCoy. Marsh also claims Detective Scoggins used excessive force when interrogating him. The Court will address the claims separately after explaining why the claim against Detective Scoggins in his official capacity will be dismissed.

    **1.**    **Official Capacity**

Detective Scoggins is a detective for the Bradley County Sheriff's Office. A claim against Detective Scoggins in his official capacity is treated as an action against the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir.1992). Because Detective Scoggins has been sued in his official capacity as an employee of Bradley County, Tennessee, the Court must proceed as if Plaintiff has in fact sued Bradley County. Therefore, in order to prevail, Plaintiff must demonstrate that the alleged violation of his constitutional rights resulted from acts representing official policy or custom adopted by Bradley County. *Monell v. Dept. of Social*

*Services of the City of New York*, 436 U.S. 658, 690-91(1978); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245-46 (6th Cir.1989), *cert. denied*, 495 U.S. 932 (1990).

In order to prevail in an action against a defendant in his official capacity, a plaintiff must show, first, that he has suffered harm because of a constitutional violation and second, that a policy or custom of the entity-in this case, Bradley County-caused the harm. *See Collins v. Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Marsh must identify the policy, connect the policy to the county itself, and show that the particular injury was incurred because of the execution of that policy, all of which he has failed to do. *See Garner v. Memphis Police Dept*. 8 F.3d 358, 363-64 (6th Cir.1993), *cert. denied*, 510 U.S. 1177 (1994).

Marsh does not allege that the violation of his rights resulted from any policy or custom on the part of Bradley County, thus all claims against Detective Scoggins in his official capacity will be **DISMISSED WITH PREJUDICE.**

### 2. Excessive Bond

Marsh claims Detective Scoggins "made it clear that [his] judicial state court associates would set [ ] a bond so high, that [Marsh] would wish [he] had cooperated." (Court Doc. 1, p. 4). According to Marsh, the detective asked the judge to set his bond at one million dollars.

There are no allegations that Detective Scoggins did anything more than request a certain amount of bond. For example, there are no allegations the detective exercised significant influence over the bond decision or that he provided any false information to lead to the denial of bond. *See Wagenmann v. Adams,* 829 F.2d 196, 211-213 (1st Cir.

-15-

Case 1:09-cv-00013-HSM-SKL  Document 10  Filed 02/07/12  Page 15 of 18  PageID #: 62

1987) (law enforcement officer may be liable under § 1983 based on evidence he exercised significant influence over the bail decision and that his input was shaded in an effort to cause an excessive bond); *Bretz v. Kelman*, 773 F.2d 1026, 1030-32 (9th Cir. 1985) (a false accusation in one matter which leads to denial of bail in an unrelated criminal case, can support § 1983 action).

A police officer's threat to request a high bond and his subsequent request for such fails to state a constitutional violation. A mere request or recommendation to set an excessive bond is insufficient to state a constitutional violation against this detective because it was the judicial officer who set Marsh's bond and the setting of the bond was entirely at the discretion of the presiding judge. *See Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998) (discussing that the decision on the amount of bond lies solely with judicial officer and even if sheriff recommended a bond amount since bond setting is function of judicial officer, sheriff is entitled to qualified immunity). Consequently, since bond was set by the judge presiding over Marsh's case and not by Detective Scoggins, Marsh's claim that the detective merely made a bond recommendation is insufficient to raise a claim under 42 U.S.C. § 1983. Detective Scoggins could not have deprived Marsh of his constitutional right to be free from excessive bond since the detective did not set Marsh's bond and there is no evidence he influenced the amount of bond in an effort to achieve invalid interests or for any reason other than to insure Marsh's presence at trial. *See Stack,* 342 U.S. at 5. Therefore, Marsh's excessive bond claim against Detective Scoggins fails since he has not alleged facts which show the detective deprived him of a federal constitutional right. Accordingly, Marsh's claim that Detective Scoggins requested

-16-

a million dollar bond fails to state a claim under § 1983 and will be **DISMISSED WITH PREJUDICE**.

### 3. Excessive Force

Marsh also sues Detective Scoggins in his individual capacity for allegedly using excessive force by choking him when interrogating him. The Fourth Amendment protects individuals from the use of excessive force by law enforcement officers during an arrest, investigatory detention, or any other seizure. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Taking the facts alleged in the complaint as true and drawing all reasonable inferences in favor of Plaintiff, Marsh will be permitted to go forward with his excessive force claim against Detective Scoggins in his individual capacity and service of process will issue.

## VI. CONCLUSION

Accordingly, all claims against Defendants Judge Randolph, Judge Reedy, and ADA McCoy in their individual and official capacities will be **DISMISSED WITH PREJUDICE** from this lawsuit. The Clerk **SHALL** reflect the dismissal of Judge Randolph, Judge Reedy, and ADA McCoy as defendants from this case on the Court's CM/ECF docket.

The excessive bond claim against Detective Scoggins and all claims against Detective Scoggins in his official capacity will be **DISMISSED WITH PREJUDICE**. The excessive force claim against Detective Scoggins in his individual capacity will proceed at this time and service of process will issue.

A separate order will enter.

                                                                                           */s/Harry S. Mattice, Jr.*
                                                                                        HARRY S. MATTICE, JR.
                                                               UNITED STATES DISTRICT JUDGE